**Sean and Catherine HIGGINS**

v.

**PHILADELPHIA GAS WORKS.**

**Bankruptcy No. 85–0474.**

United States District Court,
E.D. Pennsylvania.

Oct. 9, 1985.

Deborah Harris, Philadelphia, Pa., for plaintiff.

John F. Egan, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Plaintiffs Sean and Catherine Higgins ("plaintiffs") have filed exceptions to the Proposed Findings of Fact and Conclusions of Law of United States Bankruptcy Judge William A. King, Jr. For the reasons set forth below, I grant plaintiffs' motion for attorneys' fees, pursuant to the Civil Rights Attorney's Fees Awards Act of 1976 ("Fee Awards Act"), 42 U.S.C. § 1988.

Plaintiffs filed a voluntary joint petition under Chapter 13 of the Bankruptcy Code on December 28, 1982. On January 20, 1983, plaintiffs filed a complaint against Philadelphia Gas Works ("PGW"), seeking declaratory and injunctive relief as a result of PGW's alleged improper refusal to restore gas service to plaintiffs' residence.

Plaintiffs' complaint alleged violations of 11 U.S.C. §§ 362, 366, 525; 42 U.S.C. § 1983; and the Due Process Clause of the Fourteenth Amendment. The debtors orally amended their complaint on January 21, 1983 to include claims under 11 U.S.C. §§ 366 (a) and 525. The complaint further sought an award of attorney's fees and "such other relief as the Court deems just and proper."

Trial was held on January 21, 1983, and the Bankruptcy Judge reserved decision on the matter. On March 9, 1983, attorneys for the plaintiffs and PGW entered into a settlement agreement, whereby PGW agreed to restore gas service to the plaintiffs' residence in return for the plaintiffs' payment of a security deposit and a fee for replacing a gas meter. The settlement purported to serve as a release by both parties of all claims for injunctive relief, declaratory relief and damages. An Order approving the settlement stipulation was entered on March 11, 1983.

On June 2, 1983, counsel for plaintiffs filed a motion for an award of attorney's fees under the Fee Awards Act. Plaintiffs argued that they were the prevailing party in this dispute and that an award of attorney's fees in this matter would serve the purposes of the Fee Awards Act. As part of the motion for attorney's fees, plaintiffs' counsel filed a petition for fees in the amount of $3,162.50.

In response to plaintiffs' motion, PGW claimed that the settlement stipulation barred an award of attorney's fees; that the plaintiffs were not prevailing parties as required by the Fee Awards Act; and that such an award was not appropriate under the facts of this case. In its response PGW did not contest that the fee plaintiffs requested was reasonable.

A hearing was held on the motion on August 11, 1983. The Bankruptcy Judge determined that plaintiffs' entitlement to attorney's under the Fee Awards Act was not a "core" bankruptcy matter. On August 9, 1985, the Bankruptcy Judge submitted Proposed Findings of Fact and Conclusions of Law to the District Court for entry of final judgment in accordance with 28 U.S.C. § 157(c)(1).

In his Proposed Findings of Fact and Conclusions of Law, the Bankruptcy Judge found that the plaintiffs had not waived their right to attorney's fees in the stipulation of settlement. However, he proposed a denial of fees on the grounds that the plaintiffs were not prevailing parties for purposes of the Fee Awards Act. According to the Bankruptcy Judge, plaintiffs were not entitled to fees because he would have decided against plaintiffs on the merits if the case had not been settled.

On August 26, 1985, the plaintiffs filed exceptions to the Bankruptcy Judge's proposed denial of attorney's fees. Plaintiffs argue that the Bankruptcy Judge misapplied the law in this area. They contend that they are entitled to fees regardless of the Bankruptcy Judge's view of the merits of the underlying dispute since they achieved the primary relief sought in their complaint.

On September 13, 1985, PGW filed its response to plaintiffs' exceptions. PGW claims that its conduct in restoring gas service to plaintiffs was gratuitous as it was not required to do so based on its long-standing policy of refusing to restore service to debtors who have illegally tampered with gas company equipment and based on established case law in this district. For this reason, PGW argues, plaintiffs have not essentially succeeded in obtaining the relief they sought and are not prevailing parties for purposes of the Fee Awards Act.

FINDINGS OF FACT [1]

1. Defendant PGW is the name used by the City of Philadelphia for its assets which are used to furnish gas service to customers.

2. Defendant PGW is managed by Philadelphia Facilities Management Corporation, a non-profit corporation organized by the City of Philadelphia for the sole purpose of operating PGW for the benefit of the City.

3. Plaintiffs Sean and Catherine Higgins are a married couple residing at 5848 North Marshall Street in Philadelphia.

4. On or about September 10, 1981, PGW discontinued gas service to the plaintiffs' residence because plaintiffs owed $879.45 on their account.

5. Due to their financial situation, the plaintiffs were unable to pay the outstanding debt.

6. In late September or early October, 1981, Sean Higgins, without the authorization of PGW, reconnected gas service to the plaintiffs' residence because he feared that a lack of heat would result in harm to the health of his two (2) children.

7. PGW terminated service to plaintiffs' residence on August 27, 1982, by removing the gas meter.

8. During the period when plaintiffs used gas illegally, plaintiffs used gas valued at $713.54.

9. On December 29, 1982, plaintiffs filed a voluntary joint petition under Chapter 13 of the Bankruptcy Code.

10. On December 29, 1982, counsel for plaintiffs spoke to an employee of PGW, Mr. Michael Bush, to arrange for reconnection of residential gas service.

11. Mr. Bush advised plaintiffs' counsel that their average monthly gas bill was $78.00.

12. Under PGW Gas Service Tariff No. 8, §§ 3.52 and 3.53, PGW may require a security deposit for restoration of service

---

1. At trial, the parties stipulated to the facts set forth in paragraphs 1, 4, 5–8, 16, 18–27, and 29 of plaintiffs' complaint. The parties also stipu-lated to the last sentence of paragraph 28. Record, at 3–5. I find other material facts in the text of this Memorandum.

in an amount equal to twice the average monthly gas bill.

13. Under these regulations, plaintiffs would have had to deposit $156.00 to have their service restored.

14. PGW's employee, Mr. Bush, told plaintiffs' counsel that PGW would not renew service to plaintiffs' residence even upon receipt of a security deposit of $156.00.

15. PGW's counsel later informed plaintiffs' counsel that gas service might be restored if a security deposit plus the amount of the illegally consumed gas ($713.54) were paid; however, PGW would not assure restoration of service because of the prior illegal conduct of the plaintiffs.

16. After a lawsuit, the parties entered into a stipulation of settlement restoring gas service, which was the result desired in the litigation.

17. The litigation was a catalyst that brought about restoration of gas service to plaintiffs.

CONCLUSIONS OF LAW

1. Plaintiffs did not waive their right to seek an award of attorney's fees in the stipulation of settlement.

2. Plaintiffs are prevailing parties for the purposes of the Fee Awards Act, 42 U.S.C. § 1988.

3. Plaintiffs are entitled to an award of a "reasonable attorney's fee" under the Fee Awards Act.

DISCUSSION

I. *Effect of the Stipulation*

The first issue is whether the plaintiffs waived their right to seek attorney's fees under the Fee Awards Act by entering into the stipulation of settlement, which reads as follows:

"The parties in the above-captioned action, by their counsel, hereby agree that plaintiffs' claims for injunctive and declaratory relief are hereby settled upon the following terms:

1. Defendants have restored residential gas service to the plaintiffs at 5848 North Marshall Street, Philadelphia, Pennsylvania upon receipt of a security deposit in the amount of $156.00 plus a fee of $20.00 for replacement of the gas meter.

2. Plaintiffs and defendants hereby release each other and their respective employees, officers, agents and successors from all claims for injunctive relief, declaratory relief, and damages which they had or shall have as a result of the claims asserted in the above-captioned proceedings.

3. This Stipulation shall take effect upon the entry of an Order by this Court approving the Stipulation."

In their complaint, the plaintiffs specifically requested declaratory and injunctive relief, an award of attorney's fees, and "such other relief as the Court deems just and proper." PGW argues that because an award of attorney's fees was specifically sought as a measure of relief in the complaint, such an award is a claim asserted in these proceedings, as contemplated by the second paragraph of the stipulation. Thus, PGW argues, plaintiffs relinquished any claim for attorney's fees as part of the settlement.

An award of attorney's fee would seem to be a "claim asserted in these proceedings," but it is probably not a claim for "damages," nor is it a claim for injunctive or declaratory relief.[2] The introductory sentence in the first paragraph of the stipulation states that "claims for injunctive and declaratory relief are hereby settled...." There is no reference here to attorney's

---

**2.** The Fee Awards Act itself states that attorney's fees are "part of the costs." 42 U.S.C. § 1988. Thus, such fees appear to be separate from damages. *See also, Marek v. Chesny,* —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (attorney's fees are part of costs that may be awarded under Rule 68 of the Federal Rules of Civil Procedure); *Kentucky v. Graham,* —— U.S. ——,

105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (the losing party, the party who must pay the costs of the litigation, is clearly the party who should also bear the liability for attorney's fees under § 1988); *Fernandes v. Limmer,* 663 F.2d 619 (5th Cir.1981) (attorney's fees are an element of costs, not damages).

fees, costs or other claims. Thus, the stipulation is, at best, ambiguous as to the intentions of the parties with respect to attorney's fees.

The Third Circuit decided a similar issue in *El Club del Barrio, Inc. v. United Community Corporations, Inc.,* 735 F.2d 98 (3d Cir.1984). In *El Club,* the settlement agreement was silent with regard to attorney's fees. The parties had been unable to resolve the question of attorney's fees during negotiations and had even excluded language in an earlier draft of a settlement agreement stating that plaintiff had expressly reserved the right to seek such fees. The Court did not construe the silence of the agreement and the conduct during settlement negotiations as constituting a waiver of a right to counsel fees.

In its opinion, the Court referred to the Supreme Court's holdings in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) and *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> "These cases hold that a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render an award unjust."

735 F.2d at 100.

Silence in the settlement agreement as to a party's right to counsel fees does not constitute such a special circumstance:

> "If the parties cannot agree on counsel fees and the losing party wishes to foreclose a suit under section 1988 for attorneys fees, it must insist that a stipulation to that effect be placed in the settlement agreement."

*Id.* at 101.

■ Because the stipulation of settlement does not clearly and unambiguously refer to a waiver of a right to attorney's fees, the plaintiffs did not waive their right to seek such fees.

## II. *Awarding Attorney's Fees Under The Fee Awards Act*

The second issue is whether plaintiffs are entitled to an award of attorney's fees under the Fee Awards Act, which provides in relevant part:

> "In any action or proceeding to enforce a provision of section ... 1983 ... of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

42 U.S.C. § 1988.

As the Supreme Court noted in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances. H.R.Rep. No. 94–1558, p. 1 (1976). Accordingly, a prevailing plaintiff ' "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' S.Rep. No. 94–1011, p. 4 (1976) (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 [88 S.Ct. 964, 966, 19 L.Ed.2d 1263] (1968)."

461 U.S. at 429, 103 S.Ct. at 1937.

■ The Supreme Court greatly expanded the scope of the Fee Awards Act in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). *Thiboutot* involved a cause of action under 42 U.S.C. § 1983. Section 1983 provides for redress against any person who, under color of state law, violates any other person's rights secured by the Constitution or laws of the United States.[3] In *Thiboutot,* the Supreme Court held that § 1983 encompasses claims based on purely statutory violations of federal law. "[S]ince § 1988 makes no exceptions for statutory § 1983 actions, § 1988 plainly applies ..." 448

---

**3.** Section 1983 of Title 42 provides:

"Every person who, under color or any statute, ordinance, regulation, custom, or use, or any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

U.S. at 9, 100 S.Ct. at 2507. Thus, prevailing parties in statutory § 1983 actions are entitled to awards of attorney's fees unless special circumstances would render such an award unjust. *Hensley v. Eckerhart*, 461 U.S. at 429, 103 S.Ct. at 1937.

■ Section 1983 provides a remedy for those rights guaranteed by the federal bankruptcy statutes. *In re Maya*, 8 B.R. 202 (Bankr.E.D.Pa.1981). *Accord, In re Gibbs*, 12 B.R. 737 (Bankr.D.Ct.1981).

■ In the present action, plaintiffs' complaint states a cause of action under § 1983 for PGW's alleged violation of various provisions of the Bankruptcy Code. The complaint also alleges a violation of the Due Process clause of the Fourteenth Amendment.[4]

■ Unless special circumstances would render an award of attorney's fees unjust, then, plaintiffs are entitled to an award of fees if they are prevailing parties in this dispute. A party need not obtain a judgment on the merits in order to be a "prevailing party" within the meaning of the Fee Awards Act. In *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the Supreme Court held that the "fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees." 448 U.S. at 129, 100 S.Ct. at 2575. Thus, the fact that the parties in this case resolved their dispute by settlement does not bar an award of fees to plaintiffs.

In his Proposed Findings of Fact and Conclusions of Law, the Bankruptcy Judge ruled that the plaintiffs were not prevailing parties for purposes of the Fee Awards Act. Citing *Morrison v. Ayoob*, 627 F.2d 669 (3d Cir.1980). *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), the Bankruptcy Judge noted that in the Third Circuit, the test of whether a person is a prevailing party is whether he *essentially succeeds* in obtaining the relief he seeks in his claims on the merits. The focus is on relief received rather than any formal procedural labels. 627 F.2d at 670, 671. The Bankruptcy Judge then looked to the opinion of the District Court in *Institutionalized Juveniles v. Secretary of Public Welfare*, 568 F.Supp. 1020 (E.D.Pa. 1983), *aff'd* in part and *vacated* in part, 758 F.2d 897 (3rd Cir.1985) for a definition of "essentially succeeds":

> "To satisfy the 'essentially succeeded' standard the plaintiffs must establish not only that as a matter of fact they received all or some of the relief they sought, *but also that they have succeeded in the legal sense*. In other words, the defendants must not have acted gratuitously. If the court determines that the defendant's conduct, however beneficial it is to the plaintiffs and however it may resemble the relief sought by plaintiff's suit, is not required by law, then defendants have acted gratuitously, and plaintiffs have not prevailed in a legal sense.... One court suggested that this requirement is satisfied if the plaintiffs' complaint would have survived a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)...."

*Institutionalized Juveniles*, 568 F.Supp. at 1027 (citations omitted) (emphasis added).

With this standard in mind, the Bankruptcy Judge viewed the facts in this case. He noted that PGW's initial refusal to restore gas service to the plaintiffs was a result of the plaintiffs' tampering with gas company equipment and illegally consuming gas. In a case of first impression before his court based on similar facts, the Bankruptcy Judge had refused to order a public utility to restore residential gas service to a debtor who had illegally tampered with gas company equipment and stolen gas. *In re Webb*, 38 B.R. 541 (Bankr.E.D.Pa.1984). Had PGW moved to dismiss plaintiffs' complaint in the present action, the Bankruptcy Judge noted, he would have granted the

---

4. The requisite state action for a § 1983 action is present in this case. All of the real and personal property subsumed under the name "PGW" is wholly owned and operated by the City of Philadelphia. PGW therefore acts "under color or state law" for purposes of § 1983. *Dawes v. Philadelphia Gas Commission*, 421 F.Supp. 806, 814–15 (E.D.Pa.1976).

motion on the basis of his previous decision in *Webb.* For this reason, the plaintiffs had not essentially succeeded in obtaining relief and could not be prevailing parties for purposes of the Fee Awards Act.

I disagree with the Bankruptcy Judge's conclusion in this matter in two respects. First, the Third Circuit has recently reviewed the District Court's decision in *Institutionalized Juveniles* and re-articulated its test for deciding whether a litigant is a prevailing party for purposes of the Fee Awards Act. *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897 (3rd Cir.1985). The Court's opinion makes no mention of the so-called "legal merits" test that the District Court in *Institutionalized Juveniles* and the Bankruptcy Judge in this matter applied. The legal merits test, then, does not appear to be used in this circuit to determine whether a litigant is a prevailing party.

Moreover, even if the legal merits test is applied to the facts of this case, plaintiffs would still be prevailing parties. The test has been applied in other circuits. *See e.g. Hennigan v. Ouachita Parish School Board,* 749 F.2d 1148 (5th Cir.1985); *Johnston v. Jago,* 691 F.2d 283 (6th Cir.1982); *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978). In *Hennigan,* the court articulated this test in the following fashion:

> "... a plaintiff who achieves the goal sought in a civil rights suit by voluntary action of the defendant prevails within the meaning of the Act if she demonstrates that the suit caused the defendant to act, unless the defendant proves that the *plaintiff's claim had no colorable merit and the defendant made the change gratuitously for reasons unrelated to the potential merit of the suit.*"

749 F.2d at 1149 (emphasis added).

*Webb*—a single decision in a bankruptcy court—only focused on claims similar to those of the present plaintiffs under the Bankruptcy Code. In *Webb,* the Bankruptcy Judge did not resolve any constitutional issues, and in the case presently before me, he did not reach plaintiffs' claims under the due process clause of the Fourteenth Amendment. In their Complaint, plaintiffs alleged:

> "By denying service to the [plaintiffs] without notice or publication of regulations governing customers who have allegedly used gas illegally, PGW has violated the [plaintiffs'] right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983."

Complaint at paragraph 34.

I am aware of no case in which a court has held that a utility company can refuse to restore service to a customer who proffers the requisite security deposit without notice and some kind of a hearing. Such action might arguably offend the due process clause In *Memphis Light, Gas & Water Division,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Supreme Court recognized the importance of utilities to modern life:

> "Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety."

436 U.S. at 18, 98 S.Ct. at 1565.

In that case, the Supreme Court ruled that customers were entitled to notice and "some kind of hearing" before terminating service to customers. *Id. See also Myers v. City of Alcoa,* 752 F.2d 196, 198 (6th Cir.1985) (due process clause prohibits utility from terminating service without notice and hearing to customer whose meter had been removed without the utility's authority); *Dawes v. Philadelphia Gas Commission,* 421 F.Supp. at 812, 814–17 (denying motion to dismiss due process claims of subclass of persons who were unable to obtain restoration of gas service because of financial inability to pay security deposits demanded by PGW).

■ I do not decide the merits of this matter. The record is unclear as to whether PGW's procedures for dealing with those in plaintiffs' position comports with what due process requires or whether the initial denial of gas service was arbitrary

or otherwise unlawful. But I note that plaintiffs' constitutional claim is certainly not groundless or totally without merit. Thus, plaintiffs have met the burden of the legal merits test: had PGW moved to dismiss the due process claim, that motion should have been denied.

### III. *The Test Articulated In "Institutionalized Juveniles"*

■ In *Institutionalized Juveniles*, the Court reviewed the test for determining whether plaintiffs are entitled to awards of counsel fees under the Fee Awards Act:

"The method of determining eligibility for attorney fees under 42 U.S.C. § 1988 (1982) is now well established: a court must decide whether plaintiffs are prevailing parties and whether there is a causal connection between the litigation and the relief obtained from the defendant...."

758 F.2d at 910 (citations omitted).

The standard used in the Third Circuit for determining prevailing party status is whether a plaintiff has achieved some of the benefit sought by the party bringing the suit. *Id.* To apply this test, a district court must

"first ... identify the relief plaintiff sought and, in relevant cases, the legal theories on which the relief was based. Usually a common-sense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed ... *The focus of this analysis is on the relief actually obtained rather than on the success of the legal theories...."*

*Id.* at 911 (citations omitted) (emphasis added).

In this case, plaintiffs asked the Bankruptcy Judge to

"Declare unlawful and enjoin [PGW's] refusal to restore gas service to plaintiffs unless plaintiffs pay $713.54 in addition to a security deposit."

Under the terms of the Stipulation of Settlement, PGW agreed to restore gas service to plaintiffs' residence "upon receipt of a security deposit in the amount of $156.00

plus a fee of $20.00 for replacement of the gas meter." Earlier PGW would not assure plaintiffs that it would restore service to their residence even if plaintiffs paid for the amount of illegally consumed gas in addition to a security deposit.

Using the common sense approach of comparing relief sought and relief obtained, it is clear that plaintiffs obtained the primary relief sought: their gas service was restored upon payment of a security deposit and the costs of replacing a gas meter. I conclude that plaintiffs achieved some of the benefit they sought in the litigation and thus are prevailing parties under the meaning of the Fee Awards Act.

The inquiry does not end here, however. I must also determine whether the litigation is causally related to the relief obtained. The test in this area

"has been stated in various ways, but generally a court should decide whether the litigation 'constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.' *Sullivan v. Commonwealth of Pennsylvania Department of Labor and Industry*, 663 F.2d 443, 452 (3d Cir.1981) ... We have also held that, in determining whether causation is shown, a district court is 'bound to apply the most expansive definition....' *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1169 (3d Cir.1982). Thus, although the litigation must have been a 'catalyst for the implementation of all or any of the reform measures,' [*Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir.1979) ], it need not have been the only catalyst."

*Institutionalized Juveniles*, 758 F.2d at 916 (some citations omitted).

Turning to the facts in the present case, the litigation was one catalyst that brought about the restoration of gas service to the plaintiffs' residence. At trial, Michael Bush, an employee of PGW, testified that PGW's general policy is to refuse to restore service to those who have tampered with gas company equipment and stolen

gas. Record, at 21–22, 28. Mr. Bush later testified that his superiors resolve these cases on an individual basis but that he did not know why gas service was restored in some cases but not in others. Record, at 24–26, 28–29.

PGW would not assure plaintiffs that it would restore gas service at all to plaintiffs' residence—even if plaintiffs paid for the illegally used gas and paid a security deposit. Under the Stipulation of Settlement, PGW agreed to restore gas service if plaintiffs paid a security deposit and the cost of replacing a gas meter. Thus, the litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief. *Institutionalized Juveniles*, 758 F.2d at 916.

In its Memorandum of Law in Support of Defendants' Answer to Motion for Attorney's Fees, PGW argues that it

"has not abandoned or in any way conceded its established position that service was withheld from the [plaintiffs] because they made an unauthorized reconnection ... [PGW's] position throughout this proceeding has been that it will consider restoring gas service to those who have stolen gas, in the event that they make voluntary restitution ...

"Restoration of service to the [plaintiffs] was not a manifestation of an abandonment or of a retreat from this established policy. Service was restored for several reasons, not the least of which was that the [plaintiffs] made an *effective restitution.* Mr. Higgins' testimony at the January 21, 1983 hearing ... as well as the [plaintiffs'] exposure during those proceedings to information regarding the dangers of gas stealing, satisfy PGW that the [plaintiffs] are aware of the serious danger and do not dismiss is lightly."

Memorandum, at 8–9 (emphasis in original). Even considering PGW's position, I note that the test for determining whether the litigation is causally related to the relief obtained requires that the litigation need only be *one* of the catalysts for change; it

need not be the *only* catalyst. *Institutionalized Juveniles*, 758 F.2d at 916. The proceedings led to PGW's willingness to restore gas service to plaintiffs. No more is required to show the requisite causation.

In short, under the criteria outlined in *Institutionalized Juveniles* for determining eligibility for attorney's fee under the Fee Awards Act, plaintiffs are entitled to an award of fees.

## IV. *Plaintiffs' Fee Petition*

As part of its Motion for Attorney's Fees, plaintiffs have submitted a fee petition in the amount of $3,162.50. Plaintiffs' counsel avers in the fee petition that she worked 21.25 hours on the merits of the case and 6.25 hours on the fee petition. Plaintiff has not submitted a fee petition for time spent on this appeal. In her Declaration, plaintiff states that the Attorney's Fees Committee of Community Legal Services, in accordance with the policies of the Board of Trustees of Community Legal Services, Inc., has approved an hourly rate of $115.00 per hour for work performed in 1983.

PGW has not presented any opposition to the amount of the proposed fee requested by plaintiffs' counsel.

 Section 1988 provides for an award of "a reasonable attorney's fees." In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, the Supreme Court noted that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433, 103 S.Ct. at 1939. The time spent preparing a fee petition and successfully litigating a fee appeal is also compensable. *Prandini v. National Tea Company,* 585 F.2d 47, 53 (3d Cir. 1978). In addition, a court should compensate attorneys working for nonprofit agencies that provide free legal services at prevailing market rates. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

But the "product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee, upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940. In this case, plaintiffs' counsel has not requested an upward adjustment in the lodestar and agrees that such an adjustment is not warranted "in light of the relatively straight-forward nature of this case." Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, at 7n.

I believe that a downward adjustment of the lodestar would also be inappropriate. The Supreme Court in *Hensley v. Eckerhart* emphasized that the district court should look to the degree of success obtained in adjusting the lodestar:

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.... The result is what matters."

461 U.S. at 435, 103 S.Ct. at 1940.

In the instant action, the plaintiffs have achieved the primary relief sought: under the terms of the settlement, PGW has agreed to restore gas service to their residence upon payment of a security deposit and a fee to replace a gas meter. Plaintiffs need not prevail on all claims to be entitled to a fully compensatory fee. *Hensley v. Eckerhart, Id.*

I believe that plaintiffs are entitled to a fully compensatory fee in this matter. I note that other courts in this district have found the fee schedule proposed by Community Legal Services to be fair and reasonable. *See, e.g. Johnson v. Second National Fund Corp.*, 515 F.Supp. 1380 (E.D. Pa.1981); *Bolden v. Pennsylvania State Police*, 491 F.Supp. 958, 964–65 (E.D.Pa. 1980).

I, therefore, approve plaintiffs request to award to Community Legal Services, Inc. the lodestar figure of $2,443.75 plus $718.75 for the preparation of the fee peti-tion, in addition to a reasonable fee for litigation of this successful appeal for fees. If the issue of the appropriate amount of the fee is contested, the matter will be remanded to the Bankruptcy Judge for further proceedings.