**In re Fred J. SZOSTEK, Denise M. Szostek, Debtors.**

**Bankruptcy No. 87–03425F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 6, 1988.

As Amended Dec. 12, 1988.

---

Jonah D. Levin, Norristown, Pa., for movant, The Kissell Co.

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for debtors/movants, Fred J. Szostek and Denise M. Szostek.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

I have before me two motions, the first brought by the debtors, Fred and Denise Szostek, for an award of attorneys' fees and the second brought by a creditor, The Kissell Company, which seeks to have the debtors' confirmed chapter 13 plan either dismissed, revoked or modified.[1]

### I.

The debtors filed their bankruptcy petition on July 7, 1987. On August 3, 1987, notice was issued scheduling the meeting of creditors and a hearing on confirmation of the plan. The notice stated that the confirmation hearing would be held on December 15, 1987 and that objections to confirmation shall be filed no later than ten days before that hearing. Bankr.Rule 3020(b)(1). Kissell filed a secured claim in

---

1. At the June 16, 1988 hearing on Kissell's motion, Kissell withdrew its request for relief from the automatic stay.

the amount of $29,242.41 on August 18, to which the debtors objected on September 4, 1987. An "amended" proof of claim subsequently was filed, which was in the amount previously requested (i.e., $29,242.41). The debtors then amended their objection, seeking a determination of the amount of Kissell's security interest pursuant to 11 U.S.C. § 506(a), (d), and relief pursuant to the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* The hearing on the objection to Kissell's claim was scheduled to be heard on December 15, 1987, the same date as the confirmation hearing. At some point prior to the December 15 hearing, the attorneys had a conversation in which counsel for Kissell requested a continuance of the objection so that he could obtain an appraisal of the debtors' real property. Counsel part company on the significance of this request. Kissell's counsel apparently assumed that counsel for the debtors thereby agreed to a postponement of both matters to a new date. Counsel for the debtors understood the continuance request to apply only to the objection to the proof of claim.

On December 15, 1987, the debtors appeared but Kissell did not. A confirmation hearing was held and, as no objection was then filed, the debtors' plan was confirmed upon recommendation of the standing chapter 13 trustee. *In re Hines*, 723 F.2d 333 (3d Cir.1983). The hearing on the objection to Kissell's claim was continued to January 25, 1988. By letter dated December 16, 1987, counsel for Kissell confirmed a telephone call to his office from the debtors' counsel, which advised that the hearing on the objection to the proof of claim had been so postponed.[2]

On December 18, 1987, three days after confirmation and 13 days after the deadline for filing objections to the plan, Kissell filed a pleading entitled "Objection to Debtors' First Amended Chapter 13 Plan and Answer of The Kissell Company to Debtors' Objection to Proof of Claim."

The hearing on the debtors' objection was held January 25, 1988; it was at that hearing that Kissell first learned that the plan had been confirmed. [N.T. at 19]. The court heard argument on the objection to the claim and on March 21, 1988 issued a memorandum [3] and order determining Kissell's secured claim to be $25,110.00 and its unsecured claim to be $3,132,41.[4] This order was in part based upon the parties' agreement that the creditor, Kissell, had violated the Truth-in-Lending Act and that therefore a $1,000.00 recoupment was appropriate. The parties disagreed on how the $1,000.00 recoupment should be applied, and the March 21 order reflects my decision that the recoupment had to be apportioned between the secured and unsecured claims.

Having prevailed on the TILA objection, debtors' counsel then sought attorneys' fees for the time spent on the apportionment issue and the Truth-in-Lending issue. The creditor argues that, as part of the parties' agreement that there was a Truth-in-Lending violation, debtors' counsel agreed to waive counsel fees, and thus arose the second dispute before me now.

## II.

I will first address the creditor's motion to revoke confirmation of the plan, dismiss the petition, or modify the confirmed chapter 13 plan.

 The Bankruptcy Code permits the court to revoke an order confirming a chap-

---

2. The body of the letter states in its entirety:
 This letter will confirm your telephone call to my office in which you advised that the hearing on debtors' Objection to Kissell's Proof of Claim has been continued to January 25, 1988 at 10:00 before Judge Fox.
 As you know we have engaged an appraiser, and as soon as I receive his written report, I will forward you a courtsy [sic] copy of same prior to the hearing.
 (Ex. 12).

3. In my memorandum resolving the proof of claim dispute, I specifically noted that any challenge to confirmation was not an issue then before me. Memorandum at 2, n. 1.

4. The debtors objected to the proof of claim on the ground that the value of the home was exceeded by the value of the mortgage and that the secured claim had to be bifurcated into two portions, secured and unsecured, 11 U.S.C. § 506(a), (d).

ter 13 plan where that order was procured by fraud. 11 U.S.C. § 1330(a).[5] Section 1330 is derived from § 671 of the former Bankruptcy Act (former 11 U.S.C. § 1071). *Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc. No. 93–137, 93rd Cong.1st Sess. Pt. II, at 210 (1973). As analyzed by various courts, the fraud referred to in § 1330(a) is the equivalent of common law fraud. That is, the plaintiff alleging fraud under § 1330(a) must prove each of the elements of a traditional cause of action for deceit: that the debtor made a representation that was materially false; that the misrepresentation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; that the representation was made to induce the court's reliance; that the court relied on the representation; and that as a consequence of such reliance the confirmation order was entered. *See In re Hicks*, 79 B.R. 45, 48–49 (Bankr.N.D.Ala. 1987); *In re Moseley*, 74 B.R. 791, 803 (Bankr.C.D.Cal.1987); *In re Edwards*, 67 B.R. 1008, 1010 (Bankr.D.C.Conn.1986). *See also In re Cleveland*, 64 B.R. 810 (Bankr.S.D.Cal.1980), *rev'd on other gnds*, 89 B.R. 69 (9th Cir.BAP 1988).[6] The burden rests upon the moving party, Kissell, to show by clear and convincing evidence that the debtors intended to commit a fraud upon the court in obtaining confirmation. *In re Scott*, 77 B.R. 636, 638 (Bankr. N.D.Ohio, 1987).

The *Moseley* court points out that the difficulties inherent in showing such fraud result in few such findings under § 1330, 74 B.R. at 803; indeed my research reveals very few cases in which revocation was deemed appropriate under § 1330(a). Confirmation was fraudulently procured in *In re Powers*, 48 B.R. 120 (Bankr.M.D.La. 1985) where the debtor failed to disclose assets, listed valuable assets as valueless, sold undisclosed assets and then used the proceeds to go scuba diving. A fraud had been perpetrated in *In re Scott*, where the debtor failed to list certain known creditors, deliberately failed to provide the court with required addresses and aliases used, and utilized multiple Social Security account numbers in various bankruptcy filings. *Compare, e.g., In re Torres*, 15 B.R. 794 (Bankr.E.D.N.Y.1981) (notice received by a creditor, albeit addressed incorrectly, is not grounds for revoking confirmation).

It is not exactly clear to me which representation made to this court is to be considered the one (or ones) that procured confirmation by fraud. The creditor argues in part that since the chapter 13 plan provides no funding for its unsecured creditors (claims in Class 3 under the plan), it should be viewed as inherently unfair and, therefore, fraudulently obtained. I cannot agree with Kissell's conclusions that the plan provides for zero funding to Class 3 creditors. It appears from the debtors' confirmed plan [Exhibit 3] that the allowed unsecured claimants (including Kissell) will be paid a large percentage of their claims,[7] and Kissell has offered no evidence to the contrary. I find here no fraudulent misrepresentation.[8]

Kissell apparently further argues that, since the plan does not provide for payment to Kissell for interest on its allowed secured claim, in compliance with 11 U.S.C. § 1325, confirmation may be revoked. Section 1325 does require that the court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan, the value of property to be

---

5. Subsection (a) provides:
 On request of a party in interest at any time within 180 days after the date of the entry of an Order of Confirmation under Section 1325 of this Title and after notice and a hearing, the Court may revoke such Order if such Order was procured by fraud.

6. I note that an adversary proceeding, rather than a motion such as the one before me, is the required procedural vehicle for a party seeking revocation of a confirmation order. *See* Bankruptcy Rule 7001(5). The opposing party has not objected to this procedural defect and I will overlook it. *See In re Stern*, 70 B.R. 472, 473 n. 1 (Bankr.E.D.Pa.1987).

7. The debtor estimates that allowed unsecured claims will receive a 95% dividend. Total payments under the plan will exceed $40,000.00.

8. Even so called "zero percent" plans are not *per se* invalid. *See In re Hines*.

distributed on account of such claim is not less than the allowed amount of such claim. However, § 1325 is inapposite to Kissell's argument for revocation. Kissell's proper remedy under this section would have been to file a timely objection pursuant to Bankruptcy Rule 3020(b)(1), and litigate the issue of present value, under § 1325(a)(5)(B)(ii), prior to confirmation. *See, e.g., In re Bonanno,* 78 B.R. 52 (Bankr.E.D.Pa.1987); *In re Torres;* 5 *Collier on Bankruptcy* ¶ 1325.01[2] at 1325–4 (15th ed. 1988). This is the procedure that was followed in *In re Mitchell,* 77 B.R. 524 (Bankr.E.D.Pa.1987), and in other cases where present value was at issue. *See, e.g., In re Fisher,* 29 B.R. 542 (Bankr.D. Kan.1983). Clearly, determination of what interest rate satisfies the present value test is a matter that must be resolved through the confirmation process. Thus, a creditor seeking interest on its claim may not do so post-confirmation.

■ Finally, Kissell argues that confirmation was procured by the debtors' counsel's fraudulent misrepresentation in obtaining confirmation in the face of an agreement to postpone.[9] Kissell does admit that, in a telephone conversation with debtors' counsel, it requested a continuance of the objection to claim only, and specifically did not request a continuance of confirmation.[10] As Kissell had not objected to confirmation prior to the court mandated deadline, and as there were funds sufficient to pay Kissell's entire claim had the debtors lost their objection to Kissell's proof of claim,[11] I cannot see how debtors' counsel should have clearly known from the conversation that both hearings were to be postponed. I find that Kissell's allegation of fraud is not supported by its evidence and, as the elements of fraud under § 1330(a) have not been shown, confirmation should not be revoked. *See e.g., In re Edwards; In re Torres. See also In re Longardner & Assocs., Inc.* 855 F.2d 455 (7th Cir.1988). *Cf. In re Stern* (an order of discharge cannot be revoked unless fraud is shown and no fraud is committed by the failure of a debtor to make plan payments, where all creditors fail to file timely proofs of claim).

### III.

■ One issue implicitly raised by the instant motion is whether a debtor's failure to comply with provisions of 11 U.S.C. § 1325(a) empowers a bankruptcy court to revoke an order of confirmation. The debtor in its memorandum of law, at 4, contends that fraud is the only basis for revocation. *Accord, e.g., In re Hicks; In re Moseley,* 74 B.R. at 803 n. 20. *But see In re Chinichian,* 784 F.2d 1440 (9th Cir.1986) (11 U.S.C. § 105(a) permits a court to revoke confirmation). For the following reasons, I need only conclude (for purposes of resolving the instant motion) that revocation of a chapter 13 order of confirmation cannot be based upon alleged violations of § 1325(a) which were known or should have been known to a creditor prior to the confirmation hearing. *Accord In re Brown,* 166 F.Supp. 903, 905 (S.D.Cal. 1958):

9. The parties' stipulation to continue the hearing date was not filed with the Clerk of the Bankruptcy Court; nor was there an order of the court allowing the stipulation. Litigants may not, by their own stipulation, effect an enlargement of time in bankruptcy proceedings. *In re Sonoma V,* 703 F.2d 429 (9th Cir.1983); *In re Snyder,* 74 B.R. 872, 876 (Bankr.E.D.Pa.1987). *See also Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 130 F.2d 185 (3d Cir.1942), *cert. denied,* 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944).

10. The parties have stipulated as follows:
"In that conversation, he requested a continuance of the debtor's [sic] objection to Kissell's claim that was scheduled for that day, so that he could obtain an appraisal of the property. In the conversation he did not request a continuance of the confirmation hearings scheduled for December 15. He did assume that the confirmation hearing would be continued along with the hearing on the objection to Kissell's claim, and that the first he learned of the confirmation was at a subsequent hearing before Your Honor on January 25, 1988."
[N.T. at 19].

11. Had there been insufficient funds to pay creditors such as Kissell who had filed proofs of claims, the standing trustee would not have recommended confirmation until the objection to the claim had been resolved.

It is unnecessary to decide whether, in a proper case, absent any showing of fraud, a court of bankruptcy might revoke or set aside a wage earner's plan once it has been confirmed. Even if a court of bankruptcy has such power, no basis for the granting of such equitable relief has been shown to exist in this case.

Current 11 U.S.C. § 1330(a) is derived from former 11 U.S.C. § 1071 which in turn was derived from former 11 U.S.C. § 13. The provision in former chapter XI, 11 U.S.C. § 786, was the same as that in former chapter XIII, § 1071. While former § 13 had been viewed as limiting revocation to instances of fraud, *In re Isidor Klein, Inc.,* 22 F.2d 906 (2d Cir.1927), that view was not unanimously held. *See* 9 *Collier on Bankruptcy,* ¶ 11.01, at 644 (14th ed. 1978). Whether § 1330(a) should be the exclusive basis for setting aside a chapter 13 order has been further clouded by the 1984 amendment to 11 U.S.C. § 1144, (P.L. No. 98–353, § 515), which added the phrase "if and only if".[12] No comparable amendment to § 1330 was made.

As I noted recently in *In re Purnell,* 92 B.R. 625, 628 n. 4 (Bankr.E.D.Pa.1988), 11 U.S.C. § 105(a) "was not designed to override specific bankruptcy code provisions under the guise of 'equitable' consideration." *See Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985). *See also In re Shoreline Concrete Co., Inc.,* 831 F.2d 903, 905 (9th Cir.1987). Thus, to the extent Congress intended codification of former § 1071 to restrict revocation hearings to questions of fraud, current § 105(a) should not broaden the issues. The facts of *Chinichian,* particularly the Ninth Circuit's emphasis that the bankruptcy court entered only a "partial" confirmation order and expressly reserved passing upon the question of good faith under § 1325(a)(3), distinguish that decision from those such as *In re Edwards* which limit the power of revocation to § 1330. It is unclear whether the Ninth Circuit would hold that an order "fully" confirming a plan may be set aside under § 105(a) irrespective of the provisions of section 1330(a). *Compare Matter of Newport Harbor Associates,* 589 F.2d 20 (1st Cir. 1978) (180 day provision of former § 386 must be strictly enforced).

What is clear, though, is that there is a "strong interest" in achieving finality in reorganization cases. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir.1988) (referring to chapter 11). The provisions of a confirmed plan bind the debtor and creditor, 11 U.S.C. § 1327(a); *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983), and the order of confirmation "is *res judicata* as to all justiciable issues decided or which could have been decided at the hearing on confirmation." *In re Lewis,* 8 B.R. 132 (Bankr.D.Idaho 1981). *Accord, e.g., In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987); *In re Lewis,* 85 B.R. 719 (E.D.Pa.1988); *In re Bonanno; In re Risser,* 22 B.R. 868 (Bankr.S.D.Cal.1982); *In re Flick,* 14 B.R. 912 (Bankr.E.D.Pa. 1981). Thus, courts have not permitted creditors to seek revocation of confirmation where the ground for revocation is, in essence, a matter that could have and should have been raised as an objection to confirmation. *In re Brown; In re Hicks; In re Edwards; In re Torres.* As the creditor here raises matters which are, at bottom, objections to the debtors' plan, and as the creditor had the opportunity to assert them at the confirmation hearing, there is no basis to set aside the confirmation order.

In sum, Kissell wrongly assumed that the confirmation hearing would be post-

---

**12.** 11 U.S.C. § 1144 now reads:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

poned and it could raise its objections at that later date. The assumption was wrong, not because of misconduct by debtors' counsel, but because of the creditor's belief that the proposed plan could not meet the requirements of 11 U.S.C. § 1325(a) unless the objection was first resolved. While in certain instances that assumption is well founded, the substantial payments proposed by the debtor permitted the standing trustee to recommend confirmation even though the objection was outstanding. *See In re Furrer*, 67 B.R. 654, 658 (Bankr.E.D.Wisc.1986). Given the impact of confirmation, the need for finality and the effect of revocation upon the debtor and other creditors, Kissell alone must bear responsibility for its error. The motion for revocation must therefore must be denied.

### IV.

Kissell's request for dismissal of this chapter 13 case under § 1307(c) or modification under § 1329(a) simply represent similar attempts to raise the debtors' alleged violations of 11 U.S.C. § 1325(a) and (b) post-confirmation.

■■■ A chapter 13 case may be dismissed pursuant to 11 U.S.C. § 1307(c)(6) for cause, including a material default by the debtor with respect to a term of a confirmed plan. The creditor here argues that, because the confirmed plan does not make provision for interest on its claim, pursuant to § 1325,[13] the debtors are in material default as envisioned by this section. "Material default" has been found only where the debtor has failed to make timely post-confirmation payments or otherwise ignored the binding terms of the plan. *See, e.g., In re Sensabaugh*, 88 B.R. 95 (Bankr.E.D.Va.1988) (debtor failed to make direct post-petition monthly payments to creditor); *In re Midkiff*, 85 B.R.

467 (Bankr.S.D.Ohio 1988) (debtors failed to make weekly payments under the confirmed plan to the chapter 13 trustee; trustee seeking dismissal must present to the court evidence of how much the debtors are in default at time of hearing); *In re Broman*, 82 B.R. 581 (Bankr.D.Colo.1988) (debtors failed to make direct monthly payments under their plan; creditor's proper recourse was to seek dismissal of the case for substantial default under § 1307(c)(6)). Kissell has offered no evidence in this case to show that the debtors have failed to comply in full with the terms of their plan, or that they have failed to make payments in a timely fashion. Thus, dismissal under § 1307(c)(6) would be inappropriate.

■■■ The creditor's final argument is that, if the case is not dismissed or revoked, it should be modified under 11 U.S.C. § 1329(a) [14] to increase payments on Kissell's unsecured claim.[15] A successful challenge under this section would require a showing by Kissell of the debtors' substantially changed circumstances, evidencing an increased ability to pay since the confirmation hearing and showing that the prospect of the change had not already been taken into account at the time of confirmation. *In re Gronski*, 86 B.R. 428, 432 (Bankr.E.D.Pa.1988); 5 *Collier on Bankruptcy* ¶ 1329.01[1][b], at 1329–4 (15th ed. 1988).[16] There being no evidence in the record that the debtors' ability to pay has increased, the creditor has failed to meet its burden necessary to modify the plan.

Therefore, Kissell's motion must be denied *in toto*.

### V.

The final issue in this dispute is the debtors' request for an award of attorney's fees and costs, pursuant to the Truth in Lending Act, 15 U.S.C. § 1640(a)(3). Their

---

**13.** Which, again, is a pre-confirmation concern.

**14.** Kissell also seeks by modification an increase in payments on its allowed secured claim. Secured creditors, though, may not seek plan modification in chapter 13. 11 U.S.C. § 1329.

**15.** The confirmed plan calls for almost 100% payment of unsecured claims.

**16.** *See also* Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong. 1st and 2d Sess., 215, 221 (1981–82).

motion asks for fees based upon the attorney's Schedule of Time Expended on this case, which in turn is based upon the attorney's contemporaneous time records, and for costs expended in litigating the creditor's proof of claim. The creditor objects to an award of fees on the basis of a purported agreement: that as part of the agreement that there was a Truth in Lending violation, debtors' counsel agreed to waive fees and costs. The creditor presents as evidence of this agreement its answer to the debtor's Truth in Lending claim with the bankruptcy court, which was filed on December 16, 1987. Paragraph 3 of this answer states in relevant part that "Kissell and debtors, by and through their respective counsel have agreed to subtract the sum of $1,000.00 from Kissell's secured claim and in lien [sic] thereof debtors' counsel have agreed to withdraw any and all claims for costs and attorney's fees relating thereto."

15 U.S.C. § 1640(a)(3) provides for the award of costs and reasonable attorney's fees "in the case of any successful action" under the Truth in Lending Act. Kissell's argument, that an action is not "successful" unless it results in a final judgment finding a violation of the Act, is without merit. While it is true that in the underlying litigation the TILA violation had been conceded, this concession does not result in a finding that the debtors were not successful in bringing their TILA action. To so hold would be contrary to the goal of § 1640, of

> "creating a system of 'private attorneys general' who will be able to aid the effective enforcement of the Act. Section 1640 is intended to allow aggrieved consumers to participate in policing the Act, and its language should be construed liberally in light of its broadly remedial purpose." ... Awarding attorney's fees only in cases where rights are vindicated after a full-blown trial would discourage consumers from seeking judicial relief for violations of the Act. This would defeat § 1640's raison d'etre, a result we cannot abide.

*Gram v. Bank of Louisiana,* 691 F.2d 728, 729 (5th Cir.1982) (citations omitted) (allowing attorney's fees where the underlying dispute was settled in its entirety). *Cf. Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees under the Fee Awards Act, 42 U.S.C. § 1988, which provides that in an action to enforce a provision of § 1983, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"); *El Club del Barrio, Inc. v. United Community Corporations, Inc.,* 735 F.2d 98 (3d Cir.1984) (counsel fees under § 1988 allowed where parties reached a settlement, which was embodied in a consent decree).

It is well settled that a plaintiff may waive his or her right to fees in a negotiated settlement agreement. *See, e.g., Ashley v. Atlantic Richfield Co.,* 794 F.2d 128 (3d Cir.1986); *El Club del Barrio, Inc.; Gram v. Bank of Louisiana; Chicano Police Officer's Ass'n. v. Stover,* 624 F.2d 127 (10th Cir.1980); *Higgins v. Philadelphia Gas Works,* 54 B.R. 928 (E.D.Pa.1985). In this circuit, it has been held that the burden is on the party who lost the underlying litigation to show that the movants clearly waived a statutory right to attorney's fees. *Ashley v. Atlantic Richfield Co.,* 794 F.2d at 137; *El Club del Barrio,* 735 F.2d at 101.

The only evidence of a waiver was presented by paragraph 3 of the creditor's answer, quoted *supra.* Debtors' counsel responded by testifying that this answer was received and reviewed on December 18, 1987 [N.T. at 15], but that he does not recall then reading paragraph 3 [N.T. at 34]. He testified that he first became aware of the creditor's position on waiver when he received the answer to his petition for fees [N.T. at 35]. Further, counsel testified that he and the creditor's counsel had settlement discussions in January and February, 1988, after the answer had been filed, and the issue of waiver had not been raised in those conversations. Debtors'

counsel, an attorney with Community Legal Services in Philadelphia, finally stated his belief that it is not the policy of that entity to waive attorney's fees, and that he in fact had not done so here. [N.T. at 11].

The issue is a close one, made difficult by the failure of defendant's counsel to obtain written documentation memorializing the parties' agreement, if any, regarding the waiver of fees and by debtors' counsel's failure to respond in any fashion to the averment in defendant's answer that attorney's fees had been waived. Moreover, I found each counsel equally credible, that is, I accept that defendant's counsel honestly believes that there was an agreement to waive fees; and I accept that debtors' counsel honestly believes that no such agreement was reached. Resolution then turns upon the legal principle that defendant has the burden of demonstrating a waiver agreement.

■ From the evidence presented I simply see no evidence of an express and clear waiver by debtors' counsel of fees and costs. Creditor's counsel did not present a settlement agreement containing such provision; nor did he produce a letter confirming such an agreement. In resolving the underlying TILA litigation, I was not asked to incorporate a waiver agreement into my decision (although the parties clearly stipulated to the TILA violation). *See El Club del Barrio, Inc.*, 735 F.2d at 99. In short, the creditor offered no agreement, correspondence or even telephone notes, to support its position. If Kissell had intended to settle its total liability on the claim during the course of the previous litigation, it was incumbent upon it to secure an express waiver of attorney's fees from debtors' counsel. An averment in a pleading to which no response is required is not sufficient to evidence opposing counsel's clear waiver; waiving counsel must affirmatively express that agreement. As the Third Circuit has held, "the express waiver rule will facilitate the finality of negotiated settlements. Thus, the measure of 'good lawyering' should be rightfully reflected within the four corners of the settlement agree-

ment." *Ashley v. Atlantic Richfield Co.*, 794 F.2d at 138–139 n. 16.

Thus, I find that the creditor has failed to meet its burden in establishing that the movants clearly waived a statutory right to fees. Therefore, I now turn to the application for attorney's fees and costs.

### VI.

■ The debtors' counsel submitted an adequately detailed schedule of time expended on TILA issues in this litigation, as well as a summary of legal experience, which I shall use in determining the reasonable value of the services rendered (the "lodestar" amount). This value is calculated by the court's determination of two factors: the rate of compensation for those who participated in the case, and the number of hours of work reasonably spent on the matter for which fees should be awarded. *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) (Lindy I), *Lindy Bros. Builders, Inc. v. American Radiator and Standing Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976) (Lindy II) and their progeny. I also note that in statutory fee shifting matters, the time spent in pursuing a fee request, including time spent in preparing the fee petition, is compensable. *Pawlak v. Greenawalt*, 713 F.2d 972 (3d Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Shadis v. Beal*, 703 F.2d 71 (3d Cir.1983); *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978); *Institutionalized Juveniles v. Secretary of Public Welfare*, 568 F.Supp. 1020 (E.D.Pa 1983), *vacated and remanded on other grounds*, 758 F.2d 897 (3d Cir.1985). However, compensation is limited "to the extent reasonably necessary to obtaining a reasonable fee award." *Shadis v. Beal*, 703 F.2d at 73.

The Third Circuit has held that legal services attorneys, who are employed by an organization which provides services at no cost, should be awarded fees equal to those awarded in similarly complex litigation to members of the private bar having similar expertise and experience. *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir.1977), *cert.*

*denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). *See also Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (affirming this approach); *Report to the Third Circuit Task Force on Court Awarded Attorney Fees,* 108 F.R.D. 237, 260 n. 70 (1985) (same).

Counsel for the debtors, who has thirteen years' legal experience, testified that his hourly fees were set by a committee, the Community Legal Services Board of Trustees [N.T. at 29; Memorandum of Law, p. 3], which adopted, and periodically updates, a fee schedule based upon a survey of the rates commanded by law practitioners and firms. The fee schedule for 1987 set debtors' counsel's fee rate at $150.00 per hour; for 1988 the rate is $160.00 per hour. [Declaration of David A. Searles in Support of Motion for Attorney Fees]. At the hearing on the motion for fees, debtors' counsel testified that he additionally spent "approximately one hour preparing for the [attorney's fees] hearing." Also, he testified that co-counsel Eric Frank, Esquire expended one-half hour preparing for the hearing. The 1988 hourly rate for Eric Frank who has twelve years experience is set at $175.00 per hour. [N.T. at 10]. Counsel did not subsequently amend, either orally at the hearing or later by way of amended motion, their request for fees to include the time spent at the hearing itself. Thus, attorney's fees are requested in the amount of $1,074.50 [17] and costs in the amount of $36.00.

Debtors' counsel spent 2.1 hours preparing an objection to Kissell's proof of claim, requesting factual admissions by way of discovery and reviewing Kissell's answer to debtors' objection. As this dispute in part stems from counsel's failure to review carefully Kissell's answer, that time spent will be disallowed. The balance, 2.0 hours, will be allowed as reasonable. *See Matter of Pine,* 705 F.2d 936, 938 (7th Cir.1983) ("two and a half hours is not an excessive amount of time for preparing a [TILA] complaint".)

Counsel also seeks compensation for discussing the TILA issues with opposing counsel (.1 hour), and .1 hour to review the court's resolution of the method by which TILA's recoupment shall be assessed. This time is reasonable and will be allowed. The 2.5 hours of time spent at the hearing on debtors' objection to Kissell's proof of claim will be reduced to 2.0 hours given the actual length of the hearing and counsel's level of experience. Thus, compensation for service rendered prior to the fee dispute totaling $652.00 will be awarded.

Counsel also requests compensation for .5 hours of time spent in preparing the motion for attorney's fees, and 1.5 hours combined in preparing for the fee hearing. Since counsel have not sought additional time for attendance at the fee hearing itself, this expenditure of time also falls within the range of reasonableness and will be awarded, *see Matter of Central Ice Cream Co.,* 841 F.2d 732 (7th Cir.1988); *Matter of Pine,* adding an additional $327.50 in fees allowed. Expenses in the amount of $30.00 shall also be reimbursed to compensate for photocopying at 20¢ per page. *See In re Mayflower Associates,* 78 B.R. 41, 52 (Bankr.E.D.Pa.1987). Thus, a total award of $1,009.50 for fees and expenses shall be entered.

Appropriate orders shall issue.

---

**17.** Counsels' hours were submitted as follows:
2.1 hours in 1987 at $150.00/hour = $315.00;
4.2 hours in 1988 at $160.00/hour = $672.00;
0.5 hours in 1988 at $175.00/hour = $87.50, for a total lodestar of $1,074.50.